UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**CIVIL ACTION NO. 4:20-CV-00035-JHM**

**JIMMIE L. AUSTIN**                                                                                               **PLAINTIFF**

**V.**

**DEPUTY JOCHEM,** *et al.*                                                                                  **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a Motion for Summary Judgment [DN 58] by Defendants Deputy Jochem ("Jochem"), Deputy Myers ("Myers"), and Deputy Sergeant Foster ("Foster") in their individual and official capacities. Plaintiff Jimmie L. Austin ("Austin") *pro se* filed a response [DN 58], and Defendants filed a reply [DN 60]. Fully briefed, this matter is ripe for decision. The Court **GRANTS IN PART** and **DENIES IN PART** the Defendants' Motion for Summary Judgment.

**I. BACKGROUND**

Austin was a pretrial detainee at the Henderson County Detention Center ("HCDC"). [DN 1]. This suit focuses on events that transpired in that facility on December 29, 2019. [*Id.* at 4]. While the parties disagree on specific details, they agree on the general facts. On that day, per facility policy, Austin was taking his daily phone call. [*Id.*]. After fifteen minutes, Jochem informed him that his allotted time had expired and ordered him to end the call. [*Id.*]. When Austin refused, Jochem administered multiple rounds of pepper spray to get him to release the phone. [DN 1-1 at 4–5]. He did. [*Id.*]. Nearly an hour later, the Defendants escorted him to the showers, providing an opportunity to remove the pepper spray. [DN 6 at 8]. Several days later, on January 2, 2020, Austin complained to Colonel Richard Hendricks ("Hendricks") that he

1

continued to suffer prolonged injuries from the chemical spray, [DN 51-1 at 2]; he received an eye flush from the facility's nursing staff that same day. [DN 6 at 9]. On January 10, 2020, he visited the facility doctor for this pain. [*Id.*].

Austin filed a *pro se* Complaint [DN 1] and Amended Complaint [DN 8] pursuant to 42 U.S.C. § 1983. In both complaints, Austin alleges violations of the First, Fourth, Fifth, Eighth, Ninth, Tenth, and Fourteenth Amendments to the Constitution. [DN 1 at 4–7]; [DN 8]. Under the Fourteenth Amendment, he alleges the Defendants administered excessive force against him and were deliberately indifferent to his injuries. Upon completion of its initial screening pursuant to 28 U.S.C. § 1915A, the Court permitted the claims to continue against Deputies Jochem, Myers, and Foster in their individual and official capacities. [DN 7]. Defendants now move for summary judgment. [DN 51].

## II.  STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to

present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

The fact that a plaintiff is *pro se* does not lessen his obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion"). However, statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

### III. DISCUSSION

Austin's Amended Complaint [DN 8] alleges multiple constitutional violations against the Defendants in their official and individual capacities. The Court addresses each of these arguments in turn.

**A. Official Capacity Claims**

First, Austin sues the Defendants in their official capacities. [DN 1 at 2]. "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165 (2013). Since "municipal departments, such as jails, are not suitable under § 1983[,]" Austin's claims against Defendants in their official capacity become claims against Henderson County. *Crouch v. Warren Cnty. Reg'l Jail*, No. 1:21-cv-P25-GNS, 2021 WL 1225963, at *2 (W.D. Ky. Mar. 31, 2021). The Court must address two issues in a § 1983 claim against a municipality: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). In short, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Buckles v. Jensen*, No. 3:17CV-P80, 2017 WL 3139571, at * 2 (W.D. Ky. Jul. 24, 2017) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). To show a causal link, the plaintiff must "identify the policy, connect the policy to the city itself, and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dept.*, 8 F.3d 358, 363–64 (6th Cir. 1993) (internal quotation omitted).

The HCDC has adopted specific policies for using aerosol pepper spray against inmates and providing medical treatment. [DN 60-1]. That policy says: "The device <u>can be used</u> in the following situations," including "to break resistance during an altercation." [*Id.*]. However, "[t]he device <u>will not be used</u> in the following situations," including "on any individual in a passive/non-resistant state[.]" [*Id.*]. Regarding post-spray treatment, the policy states "hospital treatment is not required[,]" but, "if in the deputies opinion, there may have been some unknown adverse

4

reaction caused by or from a device application, he/she shall notify his/her superior and cause the subject to receive hospital observation." [*Id.*].

Nothing "show[s] that [Austin's] particular injury was incurred because of the execution of that policy." *Garner*, 8 F.3d at 363–64. The policy does not encourage excessive force, permitting pepper spray only in certain instances where an inmate poses a disciplinary or safety issue. [DN 60-1 at 1]. Nor does the policy itself encourage officers to act indifferently to inmates' medical needs. [*Id.*]. Even though a municipal policy exists, Austin has failed to show any "causal link" between the injuries he suffered and that policy's dictates.[1] The Court **GRANTS** the Defendants' Motion for Summary Judgment as to Austin's official capacity claims.

### B. Individual Capacity Claims

Austin also sues the Defendants in their individual capacity. The Court addresses each claim individually.

#### 1. First Amendment

First, Austin contends Jochem's actions violated the First Amendment, though he never clarifies when such a violation occurred. *See* [DN 1]; [DN 58]. Given his *pro se* status, the Court construes Austin's Complaint to allege that Jochem violated this right when he forced Austin to end his phone call. [DN 1 at ¶¶ 3–4]. Even if this is Austin's intended argument, it cannot succeed. While inmates "retain their First Amendment rights to communicate with family and friends, . . . an inmate has no right to unlimited telephone use." *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994) (internal quotation marks omitted). If Austin's allotted phone time had expired, it was

---

[1] It is unclear what policies Austin refers to in his pleadings. In his Memorandum, Austin attacks two administrative policies—one concerning aerosol spray use, the other concerning medical treatment. [DN 47 at 3]. He did not provide either to the Court. However, while labeling them as "Henderson County Detention Center . . . policy," he cites to the Kentucky Administrative Regulations. [*Id.*]. Moreover, the provisions he references—501 KAR 3:060 3(2)(3) and 3:090 E1(13)—do not include the language he cites. [*Id.*].

reasonable for Jochem to demand he end the call.  Because Austin failed to provide any evidence showing a First Amendment violation, the Court **GRANTS** the Defendants' Motion for Summary Judgment on this claim.

### 2. Fourth Amendment

Next, Austin brings a claim under the Fourth Amendment. Responding to this allegation, the Defendants argue that no "unreasonable searches" occurred here.  [DN 51-1 at 5].  While this conclusion may be correct, the Fourth Amendment also protects citizens against "unreasonable seizures."  U.S. Const. amend. IV.  The application of excessive force, including the use of chemical spray, can arise to such a "seizure."  *See Graham v. Connor*, 490 U.S. 386 (1989); *Grawey v. Drury*, 567 F.3d 302 (6th Cir. 2009).  "Excessive force claims can be resolved under the Fourth, Eighth and Fourteenth Amendments—the applicable amendment depends on the plaintiff's status at the time of the incident[.]" *Coley v. Lucas Cnty.*, 799 F.3d 530, 537–38 (6th Cir. 2015).  Because Austin was a pretrial detainee at the time of the incident, the Court must analyze his excessive force claims under the Fourteenth Amendment, not the Fourth.  *Id.*; *see also Kingsley v. Hendrickson*, 576 U.S. 389 (2015).  Without addressing the merits of Austin's excessive force argument, the Court **GRANTS** the Defendants' Motion for Summary Judgment on this claim.

### 3. Fifth Amendment

Austin also invokes the Fifth Amendment.  "[T]he Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government."  *Adkins v. Payton*, No. 4:09-CV-P8, 2009 WL 1949071, at *3 n.1 (W.D. Ky. Jul. 7, 2009).  This case involves a municipal government. The Court **GRANTS** the Defendants' Motion for Summary Judgment on this claim.

### 4. Eighth Amendment

Austin's Eighth Amendment claim fails for the same reason as his Fourth Amendment claim: "The Due Process Clause of the Fourteenth Amendment provides [cruel and unusual punishment] protections to pretrial detainees." *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018). "The Eight Amendment does not apply to pretrial detainees." *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001). The Court **GRANTS** the Defendants' Motion for Summary Judgment on this claim.

### 5. Ninth Amendment

The Sixth Circuit has previously held "that the [N]inth [A]mendment does not confer substantive rights in addition to those conferred by our governing law." *Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir. 1991). "Consequently, the Ninth Amendment 'has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights claim.'" *Carlock v. Osborne*, No. 4:14CV-P14-M, 2014 WL 2218211, at *4 (W.D. Ky. May 28, 2014). The Court **GRANTS** the Defendants' Motion for Summary Judgment on this claim.

### 6. Tenth Amendment

"The Tenth Amendment concerns the distribution of power between the federal government and the state government and is irrelevant to [Austin's] claims." *Zain v. Advance Health Care Provider*, No. 4:12CV-P5-M, 2012 WL 1410031, at *2 (W.D. Ky. Apr. 23, 2012). The Court **GRANTS** the Defendants' Motion for Summary Judgment on this claim.

### 7. Fourteenth Amendment

Austin raises two claims under the Fourteenth Amendment's Due Process Clause. First, he alleges Jochem applied excessive force against him when he twice sprayed him with pepper spray. Second, he alleges the Defendants were all deliberately indifferent to his need for medical care following that chemical spraying. The Court addresses each of these arguments in turn.

### a. Excessive Force

Austin alleges Jochem "knowingly, intentionally, maliciously and with malice" used excessive force against him in violation of the Fourteenth Amendment when he administered the pepper spray. [DN 1 at 4]. In *Kingsley v. Hendrickson*, the Supreme Court established "a two-prong inquiry for Fourteenth Amendment excessive-force claims." *Hale v. Boyle Cnty., Ky. et al.*, No. 20-6195 at 8 (6th Cir. 2021). First, "an official must purposefully, knowingly, or ('possibly') recklessly engaged in the alleged physical contact with the detained person." *Id.* Second, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. 396–97 (2015). Courts consider the following factors in assessing the "reasonableness or unreasonableness of the force used":

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* A pretrial detainee may succeed by showing "the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Id.* at 398.

The Sixth Circuit has previously recognized that officers may apply limited force "in a good-faith effort to maintain or restore discipline." *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004). "A short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey an order." *Higgs v. Sanford*, No. 5:07CV-P77-R, 2009 WL 805121, at *3 (W.D. Ky. Mar. 25, 2009). But the Sixth Circuit has found "that the use of a chemical weapon, if unreasonable in manner, may constitute excessive force." *Vaughn v. City of Lebanon*, 18 F. App'x 252, 266 (6th Cir. 2001). "[T]here must exist an objective justification for the use of pepper spray." *Gaddis ex rel Gaddis v. Redford Twp.*, 364 F.3d 763, 774 (6th Cir. 2004). "The

Court of Appeals repeatedly has held that using mace on an unresisting arrestee or prisoner is unreasonable under any of the applicable use-of-force standards defined by the Eighth, Fourth, or Fourteenth Amendments." *Batson v. Hoover*, 355 F. Supp. 3d 604, 614 (E.D. Mich. 2018).

The parties dispute the number of times Jochem sprayed Austin. Austin's Complaint suggests the officer administered the spray at least two times—possibly as many as four. [DN 1-1 at ¶¶ 10–21]. Conversely, the Defendants say Jochem "had to administer two 1-second bursts of pepper spray before he was able to wrestle the phone away from plaintiff." [DN 51-1 at 9]. The video of the incident supports the Defendants' figure—the Court can identify two instances where Jochem sprayed Austin. [DN 56].

The Court finds no genuine dispute that the first spray was justified. Jochem tried to retrieve the telephone, Austin repeatedly refused. [DN 1-1 at ¶¶ 3, 14]. The "limited force used was objectively reasonable considering [Austin's] non-compliance." *Sears v. Bates*, No. 6:18-CV-234, 2020 WL 5996419, at *8 (E.D. Ky. Oct. 9, 2020).

The second spray is more complicated. Defendants claim Jochem had to "administer two 1-second bursts of pepper spray *before* he was able to wrestle the phone away from plaintiff." [DN 51-1 at 9] (emphasis added). Yet the video plainly shows that Jochem administered this second spray *after* he had regained the phone from Austin.[2] [DN 56]. In fact, the video shows another officer closing Austin's panhole door, only to have Jochem reopen that same door a few seconds later, insert his arm, and spray Austin. [DN 56]. The Defendants do not provide any possible justification for this second spraying. *See* [DN 51]; [DN 60]. If Jochem "just needed [Austin] to surrender the phone," it is hard to understand why he would spray Austin if the phone had already been surrendered. [DN 51-1 at 9].

---

[2] Jochem's Incident Report [DN 51-2] also notes: "[He] was able to retrieve the phone from Inmate Austin and administered a second 1 second burst of OC spray to [Austin's] facial region successfully." [*Id.*]. It does not elaborate.

9

Turning to *Kinglsey*'s first prong, there is no doubt that Jochem "purposefully" or "knowingly" made the alleged physical contact. 576 U.S. at 396. According to his affidavit, he believed the "force used on Mr. Austin was reasonable" and "necessary," meaning he intended to inflict the harm from the pepper spray. [DN 51-3 at ¶ 13].

As to *Kingsley*'s second prong, the Court finds the video evidence creates a genuine dispute of material fact on whether the force applied was objectively reasonable. 576 U.S. at 397. As shown in the video, Austin had relinquished the telephone prior to the second spraying, [DN 56]; his compliance could lead a factfinder to conclude that there was no "need for the use of force" and that he was not "actively resisting." *Kingsley*, 576 U.S. at 397. Similarly, the video could support a finding that there was no "security problem" necessitating the application of force because Austin was not "violent or resistant" after giving up the phone. *Powell v. Fugate*, 364 F. Supp. 3d 709, 725 (E.D. Ky 2019). The Defendants present no evidence that Austin continued to create a disturbance once returning the phone was retrieved. *Lamb v. Telle*, No. 5:12-CV-00070, 2013 WL 5970422, at *8 (W.D. Ky. Nov. 8, 2013) (finding a genuine dispute existed whether "some of the sprays . . . were in response to any actual misbehavior[.]"). Although Jochem "believe[d] the limited force used on Mr. Austin was reasonable, necessary, and not excessive in any manner," [DN 51-3 at ¶ 13], a factfinder could find this belief unreasonable given that Austin remained in his cell during the entire incident. And the fact that Jochem reopened the panhole to spray Austin suggests he made no "effort . . . to temper or to limit the amount of force," but instead tried to increase it. *Kingsley*, 576 U.S. at 397. Based on the video, these factors could support Austin's claim.

*Kingsley* also considers "the extent of the plaintiff's injury[.]" 576 U.S. at 397. He complained of burning skin, labored breathing, and blurred vision. [DN 1-1 at ¶ 34]. These types

of injuries are the exact type of harm the weapon was created to induce. *McGuire v. Union Cnty. Jail*, No. 4:13CV-P28, 2013 WL 4520282, at *5–6 (W.D. Ky. Aug. 26, 2013). The limited nature of his injuries weighs against a possible finding of excessive force.

Even though the nature of the injury weighs against a possible excessive force finding, the possible lack of any justification for that force—as shown by the video—leads the Court to find there is a genuine issue of material fact whether Jochem's use of force against Austin was reasonable. Thus, the Court **DENIES** the Defendants' Motion for Summary Judgment on Austin's Fourteenth Amendment excessive force claim against Jochem.

### b. Deliberate Indifference

"The Constitution guarantees 'a right to adequate medical treatment' for both convicted and pretrial detainees." *Love v. Franklin Cnty., Ky.*, 376 F. Supp. 3d 740, 744 (E.D. Ky. 2019) (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976)). "There are two parts to the claim, one objective, one subjective." *Spears v. Ruth*, 589 F.3d 249, 254 (6th Cir. 2009). Austin fails to provide evidence supporting either component.

First, "[f]or the objective component, the detainee must demonstrate the existence of a sufficiently serious medical need." *Id.* "A medical need is objectively serious where a plaintiff's claims arise from an injury or illness 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Guy v. Metropolitan Gov. of Nashville and Davidson Cnty.*, 687 F. App'x 471, 478 (6th Cir. 2017) (internal quotation marks omitted). After Jochem sprayed Austin on the "right side of his face," [DN 1-1 at 3], he experienced "blurriness" in his right eye. [DN 51-7 at 1]. After Jochem sprayed him again, Austin apparently experienced "complications breathing and . . . trouble with the vision in [his] right eye." [DN 1-1 at 3, 6]. It also caused "burns to the skin[.]" [DN 6 at 7]. His interrogatories suggest his injuries included "limited vision and

or blurred vision" and "pain in both the right and left eye(s)." [DN 31 at 4]. These injuries do not amount to more than "the normal effects associated with pepper spray exposure." *McDougald v. Eaches*, No. 1:16-CV-900, 2018 WL 3966245, at *6 (S.D. Oh. Aug. 17, 2018); *see also Allen v. Bosley*, 253 F. App'x 658, 660 (9th Cir. 2007). Austin has not provided evidence showing a "serious medical need" for the Defendants to be indifferent towards.

Second, "[f]or the subjective component, the detainee must demonstrate that the defendant possessed a sufficiently culpable state of mind in denying medical care." *Spears*, 589 F.3d at 254. To satisfy the subject component, the plaintiff "must show both that an official knew of [their] serious medical need and that, despite this knowledge, the official disregarded or responded unreasonably to that need." *Downard for Est. of Downard v. Martin*, 968 F.3d 594, 600 (6th Cir. 2020) (citing *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)). Based on the facts alleged, Austin cannot satisfy the subjective component either. The Court "must address the subjective component for each officer individually." *Burwell v. City of Lansing, Mich.*, 7 F.4th 456, 466 (6th Cir. 2021). Following the sprays, Austin did demand medical attention. [DN 6 at ¶ 25]. While the Defendants did not provide this assistance, they did take him to the showers within an hour—as facility policy requires. [DN 6 at ¶ 33]. Given that the pepper spray only caused burning and irritation, the Defendants had no reason to think Austin's "injuries" required any treatment beyond a decontamination shower. Once in the shower, Austin made a conscious decision not to "wash his face of said chemical and again seek medical attention[,]" potentially extending the effects of the spray. [DN 1-1 at 7]. But, Austin "reported no problems of vision or reaction not consistent with normal spray usage until the morning of 2 January 2020"; plus, he only conveyed that need to Hendricks, another HCDC official—not any of the Defendants. [DN 51-6 at 1]. The Defendants

12

could not have subjective knowledge of any injuries arising from prolonged exposure to the spray because Austin never told them specifically.

In sum, Austin's deliberate indifference claim falls short on both the objective and subject components. Therefore, the Court **GRANTS** the Defendants' Motion for Summary Judgment on this claim.

### IV. CONCLUSION

To summarize, Austin's official capacity claims fail because he has provided no evidence demonstrating a "causal link" between his alleged injury and the County's policies. Likewise, most of Austin's individual capacity claims cannot survive summary judgment. For his Fourth, Fifth, Eighth, Ninth, and Tenth Amendment claims, he cites inapplicable constitutional provisions. For his First Amendment and Fourteenth Amendment deliberate indifference claims, he fails to provide any supportive evidence. However, based on the video evidence, the Court finds a genuine dispute of material fact exists on whether Jochem applied excessive force against Austin in violation of the Fourteenth Amendment.

For the reasons set forth above, **IT IS HEREBY ORDERED** that the Defendants' Motion for Summary Judgment is **GRANTED** as to Austin's First, Fourth, Fifth, Eighth, Ninth, Tenth, and Fourteenth Amendment deliberate indifference claims. The Defendants' motion is **DENIED** as to Austin's Fourteenth Amendment excessive force claim against Jochem. The remaining Defendants are dismissed from this action.

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Jimmie L. Austin, *pro se*
Counsel of Record

November 22, 2021